UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X
                                                                :
**EUGENIA PINKARD**,                                            :
                                                                :
                             Plaintiff,                         :          **MEMORANDUM**
                                                                :          **DECISION AND ORDER**
                   **- against -**                              :
                                                                :          23-CV-1640 (AMD) (JRC)
**NYC DEPARTMENT OF EDUCATION (DOE)**,                          :
and **TEACHERS RETIREMENT SERVICE**                             :
**(TRS)**,                                                      :
                                                                :
                             Defendants.                        :
--------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

The plaintiff, proceeding *pro se*, filed a form amended complaint alleging retaliation and

wrongful termination under § 704(a) of Title VII of the Civil Rights Act of 1964 and related state

law.  (ECF No. 4 at 3–4.)  The plaintiff requested to proceed *in forma pauperis*.  (ECF No. 2.)

The motion to proceed *in forma pauperis* is granted, but the plaintiff's complaint is dismissed

with prejudice for failure to state a claim, as untimely and as barred by the doctrines of *res*

*judicata* and *Rooker-Feldman*.

## BACKGROUND

The crux of the plaintiff's claims is that the defendants are "forc[ing her] to pay [a]

pension deficit" that should have been withheld from her back pay in 2009.  (ECF No. 4 at 8.)

According to the amended complaint, the plaintiff is a former employee of the

Department of Education ("DOE").  From September 2004 until September 2005, she worked as

a school secretary on a probationary basis.  (ECF No. 4 at 6, 18.)  *See Fischer v. City of New*

*York*, 525 F. App'x 32, 34 (2d Cir. 2013) (summary order) (New York law "provides for three-

year probationary periods for school secretaries in cities, like New York, which have over

1,000,000 inhabitants." (citing N.Y. Educ. L. § 2573(1)(a), (10)(a))).  During that period, she

participated in a pension plan run by the Teachers' Retirement Service ("TRS").  (ECF No. 4 at 6.)  In September 2005, the plaintiff received an unsatisfactory performance rating and was terminated from her position.  (*Id.* at 6, 37, 44.)  Although DOE continued to employ her in various capacities, her new assignments did not allow her to participate in the TRS plan.  (*Id.* at 7, 19.)  Around 2006, the plaintiff filed a grievance with DOE, and the regional superintendent reversed the 2005 termination.  (*Id.* at 35–36.)  The plaintiff and her supervisors, however, did not learn of that decision until 2009, when DOE's Office of Teacher Records was updated.  (*Id.* at 6, 19, 37.)  The plaintiff "was reinstated" on March 25, 2009, and DOE calculated that it owed her $91,067.88 in back pay.  (*Id.* at 6, 19.)  She received a net payment of $51,057.71, after "all applicable and lawful salary deductions, including but not limited to taxes and pension deductions" had been withheld.  (*Id.* at 6–7, 19, 44.)  The plaintiff was terminated again in 2010 for excessive absences.[1]  (*Id.* at 7–8, 52–60.)

Sometime after the plaintiff was reinstated in 2009—she does not provide the exact date in the amended complaint—TRS notified her that she "owed contributions" to her pension plan "from the time [she] was terminated in 2005, until the time [she] was restored to service."  (*Id.* at 6.)  According to an exhibit attached to the amended complaint, TRS told the plaintiff that the deficit accumulated because she retroactively "received service credit with TRS for the time period of September 16, 2005 to April 30, 2009."  (*Id.* at 19.)  And although DOE withheld approximately $40,000 from her back pay, TRS did not receive any of that money, because the plaintiff was still listed as "inactive" in TRS's records at that time.  (*Id.*)  TRS also stated that it "notified [the plaintiff] of her pension contribution deficit by letter in or about May of 2011,"

---

[1] The plaintiff recognizes that DOE gave that as a reason for her termination, but disputes that she had excessive absences.  (ECF No. 4 at 7–8.)

2

and the plaintiff provides additional letters from TRS dated 2014, 2020 and 2021 discussing the deficit.  (*Id.* at 6, 20, 23, 25–28.)

The plaintiff argues that TRS's demands for additional payment constitute "harassment and retaliation" under § 704(a) of the Civil Rights Act.  (*Id.* at 8.)  TRS, she claims, "can only go by the records given to [it] by the DOE," and DOE said in 2009 that it withheld $40,000 to cover applicable deductions, including pension contributions.  (*Id.*)  The plaintiff does not explain why either DOE or TRS would want to retaliate against or harass her, but she notes that her "pension didn't start getting affected until [she] got [a] Right to Sue letter from EEOC in May 2011."  (*Id.* at 6.)[2]

Although the plaintiff contends that her "whole case is based on" the pension controversy (*id.* at 8), she lists additional grievances in the amended complaint, including that DOE improperly changed her attendance records, employment status and contractual rights "without documentation" and in violation of "Civil Service Law 75," "Civil Service Law section 76," and "Education Law 3020-a."  (*Id.* at 4, 7–8.)  She accordingly asks this Court to direct DOE to change her employment records, reinstate her license, return her to payroll and make "maximum contributions" to her TRS plan.  (*Id.* at 7–8, 10.)  She also requests unspecified damages for "loss of home, lost wages and health benefits, loss of pension contributions, [damage to her] reputation [rendering her unable] to find work, emotional and mental stress, loss of lifestyle and wrongful[] terminat[ion]."  (*Id.* at 10.)

---

[2] The plaintiff filed a lawsuit in the Southern District of New York in 2011.  *See Pinkard v. New York City Dep't of Educ.*, No. 13-CV-2745 (S.D.N.Y. Sept. 30, 2014), *appeal dismissed*, No. 14-3791 (2d Cir. Apr. 23, 2015), *cert denied*, 577 U.S. 987 (2015).  In that case, the plaintiff claimed that DOE did not rehire her as a secretary in 2009 but assigned her to Absent Teacher Reserve—a position with inferior salary and benefits—and that DOE did so because of her race.  *See id.*, ECF No. 34 at 5–6.  The court dismissed her complaint in part because she failed to state a claim for racial discrimination under Title VII of the Civil Rights Act.  *Id.* at 15–17; *see also infra* (discussing this and other S.D.N.Y. lawsuits).

The plaintiff mentions lawsuits that she previously filed in New York Supreme Court, Kings County: Index Nos. 1123193/08, 260050/09, 101971/15, 1011610/19 and 101129/21. Aside from a brief discussion of No. 260050/09, in which the court denied her request for additional $13,000 in back pay, the plaintiff does not provide any information about these cases, but she nevertheless requests this Court to "look into" them and "reverse the decisions, if found that the DOE perjured themselves or falsely represented the truth." (*Id.* at 6, 10.)

The plaintiff has also filed four other employment discrimination lawsuits in the Southern District of New York that she does not discuss in her amended complaint. All of them were based on events discussed above that occurred between 2004 and 2010. All named DOE as one of the defendants. And all were dismissed with prejudice. *See Pinkard v. NYC Dep't of Educ.* ("*Pinkard I*"), No. 11-CV-5540, 2012 WL 1592520 (S.D.N.Y. May 2, 2012) (dismissing the plaintiff's discrimination claims based on her 2005 termination, her 2006 grievance, shortcomings in her union representation in 2008–2009 and her 2009 reinstatement as untimely, and dismissing claims related to her 2010 termination and retaliation for failure to state a claim); *Pinkard v. New York City Dep't of Educ.* ("*Pinkard II*"), No. 13-CV-2745 (S.D.N.Y. Sept. 30. 2014) (discussed *supra* at n.2) (dismissing Title VII and due process claims as untimely, as barred by *res judicata* and for failure to state a claim); *Pinkard v. New York City Dep't of Educ.* ("*Pinkard III*"), No. 15-CV-7037 & *Pinkard v. United Federal of Teachers* ("*Pinkard IV*"), No. 15-CV-7038 (S.D.N.Y. Oct. 19, 2015) (dismissing both cases on *res judicata* grounds and warning the plaintiff that further duplicative litigation would result in a filing injunction).

## LEGAL STANDARD

A complaint must plead "enough facts to state a claim to relief that is plausible on its face" in order to avoid dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A

plaintiff satisfies that standard when she "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although "detailed factual allegations" are not required—especially in a *pro se* complaint that I construe liberally "to raise the strongest arguments" it suggests, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (citation omitted)—a complaint that includes only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (citation omitted)).   And "group pleading" is not allowed.  *Amiron Dev. Corp. v. Sytner*, No. 12-CV-3036, 2013 WL 1332725, at *5 (E.D.N.Y. Mar. 29, 2013).

A district court must dismiss an *in forma pauperis* action that is "frivolous" or "fails to state a claim." 28 U.S.C. § 1915(e)(2)(B).  But "a pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (cleaned up).

## DISCUSSION

### I.   Pension Deficit Claim

The plaintiff claims that the defendants unlawfully retaliated against her when TRS demanded that she pay thousands of dollars to cover an alleged pension deficit, even though DOE told her in 2009 that it already withheld money to cover that deficit.  This allegation fails to state a claim under § 704(a).  As an initial matter, the plaintiff does not make any allegations whatsoever against DOE; she only blames TRS for going against "the records given to them by the DOE."  (ECF No. 4 at 8.)  Because the plaintiff's allegations do not state what DOE did to

harm her, they do not afford DOE "fair notice of the claims against it" and must be dismissed.

*Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 531 F. Supp. 3d 673, 728 (S.D.N.Y.

2021) (citation omitted).

The plaintiff's allegations against TRS are also insufficient.  While the plaintiff clearly

states what she believes TRS did wrong, she does not explain why TRS's actions constitute

retaliation under § 704(a).  Section 704(a) makes it

> an unlawful employment practice for an employer to discriminate against any of
> [its] employees . . . because [the employee] has opposed any practice made an
> unlawful employment practice by this subchapter, or because [the employee] has
> made a charge, testified, assisted, or participated in any manner in an investigation,
> proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).  In simple terms, § 704(a) prohibits employers from retaliating against

employees for opposing discrimination or participating in Title VII proceedings.  *Jute v.*

*Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005).  The plaintiff, however, does not

claim that she did either of those things.  At most, she suggests that TRS began demanding

deficit payments after she received a Right to Sue letter in 2011, but she does not explain TRS's

connection to those proceedings.  Indeed, the plaintiff did not bring any claims against TRS in

her 2011 lawsuit in the Southern District.  Moreover, the Southern District judge dismissed Title

VII claims in that case because the plaintiff did "not identif[y] the basis for the allegedly

unlawful discrimination."  *See Pinkard II*, No. 13-CV-2745, ECF No. 34 at 16.  Because the

plaintiff provides no facts to suggest that TRS retaliated against her for any protected activity,

the amended complaint must be dismissed as to TRS as well.

The pension allegations are also untimely.  "To initiate a lawsuit under . . . Title VII . . . ,

a plaintiff must first file a timely charge with the EEOC[3] or with an appropriate state or local

---

[3] Equal Employment Opportunity Commission

agency." *Cole v. Cent. Park Sys., Inc.*, No. 09-CV-3185, 2010 WL 3747591, at *4 (E.D.N.Y. Sept. 20, 2010) (citations omitted). "A timely charge is one filed within 300 days of the alleged discriminatory conduct." *Id.* (citations omitted). Under federal law, "the timeliness of a discrimination claim is measured from the date the claimant receives notice of the allegedly discriminatory decision." *Morse v. Univ. of Vermont*, 973 F.2d 122, 125 (2d Cir. 1992) (citation omitted). Critically, "the proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful." *Id.* (citation omitted).

The plaintiff describes the retaliatory act as TRS's demand to pay the pension deficit, which occurred when she "got [her] Right to Sue letter from EEOC in May 2011." (ECF No. 4 at 6.) According to one exhibit attached to the amended complaint, "TRS notified [the plaintiff] of her pension contribution deficit by letter in or about May of 2011." (*Id.* at 20.) The plaintiff does not dispute that statement. She also attaches a 2014 letter from TRS discussing the deficit. (*Id.* at 25–26.) Accordingly, the plaintiff was on "notice of the allegedly discriminatory decision" by 2014 at the latest, *Morse*, 973 F.2d at 125, and her claim expired in 2015.

The plaintiff nevertheless claims that "the alleged discriminatory acts occurred" around "October 2022" because that is "when [she] realized that [she] was never paid a salary but [was] forced into a settlement agreement." (ECF No. 4 at 4.) The plaintiff does not point to a specific document that led her to that conclusion, but I interpret her statement to refer to an affirmation submitted by TRS's General Counsel in one of the state lawsuits. (*See id.* at 18–21.) Liberally construed, the plaintiff's argument is that TRS's General Counsel claimed for the first time in 2022 that the lump-sum payment she received in 2009 was not a salary but a settlement, which is why TRS did not receive any portion of that money to cover the pension deficit. First, that is not what TRS's General Counsel said. (*See id.* at 20–21 ("Ms. Pinkard appears to misunderstand the

use of the term 'settlement.'  There was no 'settlement' between Ms. Pinkard and the DOE

insofar as the term means a compromise;" the matter was "settled" only because it was

"resolved.".)  Second, the plaintiff does not explain why characterizing the back pay as

settlement would change either her or TRS's legal obligations with respect to the deficit

payments.  But most fundamentally, TRS's General Counsel's explanation in 2022 of what

occurred in 2009 was not a new retaliatory act that can give rise to a § 704(a) claim.  As

discussed, the plaintiff had all the relevant information to file this action in 2014 (and likely in

2011), and she does not explain why she waited until now to do so.

 The plaintiff also points to two 2023 Right to Sue letters that she received from the

EEOC.  (*Id.* at 12–13.)  The letters do not discuss what claims the plaintiff brought before the

EEOC, but they state that EEOC closed the plaintiff's case because it was "not filed within the

time limits under the law."  (*Id.*)  The letters, therefore, support the conclusion that the plaintiff

did not timely file her pension deficit claim.

## II.    Additional Claims

In addition to the pension claim, the plaintiff alleges that DOE committed several

violations of Title VII and related state law between 2004 and 2010, including unlawfully

demoting and firing her, changing her attendance records and terminating her license.  (ECF No.

4 at 6–8, 10.)  She also claims that "DOE perjured themselves or falsely represented the truth" in

several state court cases and asks the Court to "reverse those decisions."  (*Id.* at 10.)

All claims regarding DOE's conduct from 2004 to 2010 are untimely and barred by *res

judicata*.  As discussed above, the plaintiff must file any Title VII claims "within 300 days of the

alleged discriminatory conduct."  *Cole*, 2010 WL 3747591, at *4.  The plaintiff does not identify

any discriminatory acts that occurred after 2010—nor could she, because she stopped working

for DOE in that year.  (ECF No. 4 at 19.)

The plaintiff argues that the "discriminatory acts occurred . . . on April 1 2022 when [she] found out that [she] was forced into resignation" in 2010.  (*Id.* at 4.)  Construing the plaintiff's allegations liberally, I interpret her claim to be that DOE changed her records to state that she resigned instead of being fired, and that she only found out about that change in 2022.  Even if that were true, the plaintiff does not explain how that record change harmed her.  Instead, the plaintiff complains only about the underlying actions that occurred before 2010.  The allegations are thus untimely.

They are also barred by *res judicata.*  "Under the doctrine of *res judicata*, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *St. Pierre v. Dyer*, 208 F.3d 394, 399 (2d Cir. 2000) (cleaned up).  Claim preclusion "applies in later litigation if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action."  *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 221–22 (2d Cir. 2012) (citation omitted).  "Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence."  *Cieszkowska v. Gray Line N.Y.*, 295 F.3d 204, 205 (2d Cir. 2002) (per curiam) (citation omitted).

As discussed above, the plaintiff filed four lawsuits against DOE in the Southern District between 2011 and 2015, which alleged substantially the same claims as here.  The Southern District dismissed the plaintiff's Title VII wrongful termination and retaliation claims "with prejudice" for failure to state a claim in 2012.  *Pinkard I*, 2012 WL 1592520, at *10.  The court did so again in 2014, explaining that the plaintiff "has not identified the basis for the allegedly unlawful discrimination."  *Pinkard II*, No. 13-CV-2745, ECF No. 34 at 16.  The court also held

that the plaintiff's claims that were "based on events that occurred, or claims that accrued, before July 29, 2011" were "barred under the doctrine of *res judicata*." *Id.* at 11.  The court denied leave to amend.  *Id.* at 18.  In 2015, the court joined the plaintiff's remaining lawsuits, dismissed both of them with prejudice as barred by *res judicata* and warned the plaintiff to stop filing "duplicative" claims.  *Pinkard III*, No. 15-CV-7037, ECF No. 4 at 3–4; *see also Pinkard IV*, No. 15-CV-7038, ECF No. 4 at 3–4.  Aside from the pension deficit claim, all of the claims the plaintiff raises here are identical to those the Southern District already dismissed or, at most, present "different legal theories" on the "same" facts.  *Cieszkowska*, 295 F.3d at 205.  Because the Southern District dismissed all of those claims on the merits—multiple times—the plaintiff cannot raise them in this Court.[4]

Finally, this Court lacks authority to "reverse" state court decisions.  (ECF No. 4 at 10.) Under the *Rooker-Feldman* doctrine, federal district courts may not review cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 284 (2005); *see also Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482–84 & n.16 (1983).

### III.   Leave to Amend

As a general rule, courts should allow *pro se* litigants to amend their complaints.  *Dolan*, 794 F.3d at 295.  However, leave to amend is not warranted in this case, because even if the

---

[4]   *Res judicata* would not bar any claims against TRS, because TRS "was not a party" to the prior lawsuits and "is [not] in privity with the named defendant[s]" in those actions. *John St. Leasehold, LLC v. Cap. Mgmt. Res., L.P.*, 154 F. Supp. 2d 527, 541 (S.D.N.Y. 2001), *aff'd*, 283 F.3d 73 (2d Cir. 2002). But the plaintiff does not make any allegations against TRS besides the pension ones discussed above.

plaintiff clarifies which entity is retaliating against her (and for which protected activity), her claims would still be untimely and barred by the principles of *res judicata* and *Rooker-Feldman*. The plaintiff's complaint is therefore dismissed with prejudice.  *See Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013) ("Leave to amend may properly be denied if the amendment would be futile." (cleaned up) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962))); *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224–25 (2d Cir. 2017) ("Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012))); *Calvino v. Rivera*, No. 20-CV-0872, 2020 WL 527931, at *1 (S.D.N.Y. Feb. 3, 2020) (dismissing complaint as frivolous without leave to amend where "the defects in Plaintiff's complaint cannot be cured with an amendment").

**CONCLUSION**

For these reasons, the plaintiff's complaint is dismissed with prejudice and without leave to amend.  The Clerk of Court is respectfully directed to close the case, send a copy of this order to the plaintiff and note the mailing on the docket.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purposes of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

**SO ORDERED.**

s/Ann M. Donnelly

_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
       April 7, 2023

12